UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
JAMES BONOMO,                                           :   07 Civ. 5967 (CM)
                                                        :
                        Plaintiff,                      :
        -against-                                       :   FIRST AMENDED COMPLAINT
                                                        :
MITSUBISHI INTERNATIONAL                                :
CORPORATION,                                            :   PLAINTIFF DEMANDS
                                                        :   TRIAL BY JURY
                        Defendant.                      :
                                                        :
------------------------------------------------------- x

        Plaintiff, James Bonomo, by his attorneys, Liddle & Robinson, L.L.P., for his First Amended Complaint alleges as follows:

### THE PARTIES

        1.    Mr. Bonomo is a gay male of Italian descent. He resides at 312 Beaver Dam Road, Brookhaven, New York 11719. Mr. Bonomo was employed by defendant, Mitsubishi International Corporation ("MIC") from June 1999 until June 22, 2007.

        2.    Upon information and belief, MIC is a corporation with its principal place of business located at 655 Third Avenue, New York, New York 10017.

### THE NATURE OF THE ACTION

        3.    This is a civil action for damages and remedies brought under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 et seq.; the New York State Human Rights

Law, N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5. Mr. Bonomo served copies of this First Amended Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in the United States District Court.

6. Venue is proper in this district under 28 U.S.C. § 1391(a) because defendant resides in the Southern District of New York.

## FACTS

7. MIC is a wholly-owned subsidiary of Mitsubishi Corporation ("MC"). One of the many industries in which MIC is engaged is communication papers, printing and graphic arts, which includes supplying customers in North and South American with paper from Germany and Japan.

8. Mr. Bonomo joined MIC in June 1999 as the Manager of Paper Sales in MIC's New York, New York office. During his tenure, Mr. Bonomo increased annual paper sales out of the New York office from $3.5 million to approximately $39 million.

9. In April 2005, Mr. Bonomo traveled to the People's Republic of China with Mr. Tetsuya Furuichi, then MC's Manager of Communication Papers worldwide, to meet with a potential customer, Anne Paper Co., Ltd. ("Anne")

10. Mr. Furuichi, who is Japanese, worked out of MC's Tokyo office and had supervisory authority over Mr. Bonomo, as well as Mr. Bonomo's counterparts in other MIC and MC offices around the world.

11. After their initial meeting, Anne's CEO, Mr. Arthur Zhang, invited Mr. Bonomo, Mr. Furuichi and Mr. Yue Zhibo (Mr. Bonomo's counterpart at MC's Beijing office) to dinner that evening. Anne supplied a car and driver for the evening.

12. After dinner, at approximately 11:00 p.m., Mr. Zhang took everyone to a Karaoke bar and nightclub. Before they left the restaurant, Mr. Furuichi stated to Mr. Bonomo "you will be the target tonight."

13. Upon leaving the nightclub at approximately 2:00 a.m., Mr. Furuichi announced that everyone was to go to a bathhouse for a massage. Mr. Bonomo told Mr. Furuichi

that he would prefer to return to his hotel, since he was very tired. Mr. Furuichi responded "don't worry, it will be a non-sexual massage."

14. Given that Mr. Bonomo was in a foreign country without his own transportation, he accompanied Messrs. Furuichi, Zhibo and Zhang to the bathhouse.

15. During the drive, Mr. Furuichi said that he and Mr. Zhibo wanted Mr. Bonomo to come with them to the bathhouse so that they could see him unclothed.

16. Mr. Furuichi then said that "Western" or "non-Japanese" men "have large penises," implying that Asian men have smaller penises. Mr. Furuichi also said that Italian men have penises "down to here," gesturing to his knees. Mr. Bonomo is of Italian descent.

17. Upon arriving at the bathhouse, the men were directed to a locker room so that they could shower before receiving a massage, as the bathhouse required. Mr. Zhang did not accompany the others into the locker room.

18. After Mr. Bonomo had fully undressed, Mr. Zhibo grabbed Mr. Bonomo's bicep and made a comment about his "big muscles."

19. Mr. Zhibo then used his cell phone to take a picture of Mr. Bonomo's genitals.

20. Mr. Bonomo demanded that Mr. Zhibo delete the picture. Mr. Zhibo refused and left the locker room.

21. Also during this incident, Mr. Furuichi stated that Mr. Bonomo's penis looked like an "Italian sausage."

22. Mr. Bonomo was shocked and humiliated by the actions of Messrs. Furuichi and Zhibo, which left him feeling extremely embarrassed and violated.

23. A bathhouse attendant then directed Messrs. Bonomo and Furuichi to separate rooms for their massages. Following his massage, Mr. Bonomo was driven back to his hotel, along with Messrs. Furuichi, Zhibo and Zhang.

24. Since the incident, Mr. Bonomo avoided traveling with Messrs. Furuichi and Zhibo.

25. Following this incident, Mr. Furuichi has repeatedly made false and derogatory comments concerning Mr. Bonomo's performance and management capabilities to others within MIC. Upon information and belief, those comments have interfered with Mr. Bonomo's ability to develop his career at MIC.

26. Also since the incident, Mr. Bonomo's gross profit targets – on which his incentive compensation is based – have been set unreasonably high. Upon information and belief, Mr. Furuichi has been at least partially responsible for setting those targets.

27. Upon information and belief, at all relevant times, Messrs. Furuichi and Zhibo were aware that Mr. Bonomo is gay.

28. Mr. Bonomo brought the above-described facts to MIC's attention through his counsel in writing in mid-April 2007, shortly after learning that Mr. Furuichi was being transferred to New York to work in close physical proximity to Mr. Bonomo as his direct manager.

29. MIC responded to this information by conducting an "investigation" into Mr. Bonomo's claims. In connection with its investigation, MIC's actions toward Mr. Bonomo were taken in an antagonistic and hostile manner.

30. Knowing that Mr. Bonomo was represented by counsel, MIC attempted to require Mr. Bonomo to appear for an interview without counsel present.

31. When MIC finally consented to allow Mr. Bonomo to have his counsel present for any interview, MIC then refused to permit counsel to speak.

32. MIC's investigation was undertaken in bad faith and was directed not at the wrongdoing alleged by Mr. Bonomo, but on Mr. Bonomo himself as though he were the wrongdoer.

33. On June 13, 2007, MIC advised Mr. Bonomo that it had completed its "investigation" and had found no evidence to support his claims. In reporting these results, MIC said simply that the people in attendance during the incident had denied the events as described by Mr. Bonomo.

34. On June 22, 2007, with Mr. Furuichi's arrival in New York imminent, Mr. Bonomo involuntarily terminated his employment with MIC.

## FIRST CLAIM

(Discrimination Under 42 U.S.C. § 1981)

35. Mr. Bonomo repeats and realleges the allegations contained in paragraphs 1 through 34 above as if separately set forth herein.

36. By its actions detailed above, MIC has discriminated against Mr. Bonomo on the basis of his race.

37. The treatment of Mr. Bonomo was so offensive and severe that a reasonable person in his position would find his work environment to be hostile or abusive.

38. As a result of the above-described actions, Mr. Bonomo believed his work environment to be hostile and abusive.

39. The treatment of Mr. Bonomo violated 42 U.S.C. § 1981, causing Mr. Bonomo to suffer damages, including emotional pain and mental anguish, in an amount to be determined at trial.

40. Defendant additionally violated 42 U.S.C. § 1981 through its subsequent actions as described above, which upon information and belief negatively affected Mr. Bonomo's career advancement and deprived him of compensation, in an amount to be determined at trial, and which ultimately resulted in the involuntary termination of Mr. Bonomo's employment.

41. MIC's discriminatory conduct was taken with reckless indifference to Mr. Bonomo's rights, entitling him to punitive damages.

## SECOND CLAIM

(Discrimination Under the New York State Human Rights Law)

42. Mr. Bonomo repeats and realleges the allegations contained in paragraphs 1 through 41 above as if separately set forth herein.

43. At all relevant times, Mr. Bonomo was an "employee" for purposes of § 296 of the New York State Human Rights Law.

44. MIC is an "employer" for purposes of § 292 of the New York State Human Rights Law.

45. By its actions detailed above, MIC has discriminated against Mr. Bonomo on the basis of his race, national origin and sexual orientation.

46. The above-described treatment of Mr. Bonomo had the effect of creating an abusive and hostile work environment.

47. The treatment of Mr. Bonomo was so offensive and severe that it altered the terms and conditions of his employment.

48. The treatment of Mr. Bonomo constituted willful discrimination because of Mr. Bonomo's race, national origin and sexual orientation in violation of § 296 of the New York State Human Rights Law.

49. Defendant additionally violated the New York State Human Rights Law through its subsequent actions as described above, which upon information and belief negatively affected Mr. Bonomo's career advancement and deprived him of compensation, and which ultimately resulted in the involuntary termination of his employment.

50. As a result, Mr. Bonomo has suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## **THIRD CLAIM**

(Discrimination Under the New York City Human Rights Law)

51. Mr. Bonomo repeats and realleges the allegations contained in paragraphs 1 through 50 above as if separately set forth herein.

52. Mr. Bonomo is a "person" under § 8-102(1) of the New York City Human Rights Law.

53. MIC is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

54. By its actions detailed above, MIC has discriminated against Mr. Bonomo on the basis of his race, national origin and sexual orientation.

55. The above-described treatment of Mr. Bonomo had the effect of creating an abusive and hostile work environment.

56. The treatment of Mr. Bonomo was so offensive and severe that it altered the terms and conditions of his employment.

57. The treatment of Mr. Bonomo constitutes willful discrimination on the basis of his race, national origin and sexual orientation in violation of § 8-107 of the New York City Human Rights Law.

58. Defendant additionally violated the New York City Human Rights Law through its subsequent actions as described above, which upon information and belief negatively affected Mr. Bonomo's career advancement and deprived him of compensation, and which ultimately resulted in the involuntary termination of his employment.

59. By reason of the foregoing, Mr. Bonomo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

60. Upon information and belief, MIC's discriminatory conduct was taken with reckless indifference to Mr. Bonomo's rights, entitling him to punitive damages under § 8-502 of the New York City Human Rights Law.

## FOURTH CLAIM

(Retaliation Under the New York State Human Rights Law)

61. Mr. Bonomo repeats and realleges the allegations contained in paragraphs 1 through 60 above as if separately set forth herein.

62. Mr. Bonomo opposed MIC's unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law.

63. MIC retaliated against Mr. Bonomo for having engaged in the protected activity.

64. MIC's actions constitute retaliation against Mr. Bonomo in violation of the New York State Human Rights Law, § 296(7).

65. As a result, Mr. Bonomo has suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## FIFTH CLAIM

(Retaliation Under the New York City Human Rights Law)

66. Mr. Bonomo repeats and realleges the allegations contained in paragraphs 1 through 65 above as if separately set forth herein.

67. Mr. Bonomo opposed MIC's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law.

68. MIC retaliated against Mr. Bonomo for having engaged in the protected activity.

69. MIC's actions constitute retaliation against Mr. Bonomo in violation of the New York City Human Rights Law, § 8-107(7)(i).

70. By reason of the foregoing, Mr. Bonomo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

71. Upon information and belief, MIC's retaliatory conduct was taken with reckless indifference to Mr. Bonomo's rights, entitling him to punitive damages under § 8-502 of the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.  On his First Claim, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and interest;

B.  On his Second Claim, back pay, front pay, compensatory damages, costs and interest;

C.  On his Third Claim, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and interest;

D.  On his Fourth Claim, back pay, front pay, compensatory damages, costs and interest;

E.  On his Fifth Claim, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and interest; and

F.  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      October 1, 2007

LIDDLE & ROBINSON, L.L.P.

By: _____
    Jeffrey L. Liddle
    Christine A. Palmieri
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500