UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JAMES BONOMO,                            :
                Plaintiff,    :    07 Civ. 5967 (CM) (KNF)
                              :
    -against-                           :
                              :
MITSUBISHI INTERNATIONAL                 :
CORPORATION,                             :
                              :
                Defendant.    :
                              :
------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

THE FACTS ............................................................................................................................ 2

ARGUMENT ........................................................................................................................... 5

    I.    Defendant Failed to Meet Its Obligation to Preserve Evidence ................................ 5

    II.   Sanctions Are Warranted Because Defendant Failed to Satisfy Its
         Document Preservation Obligations ........................................................................ 9

CONCLUSION ..................................................................................................................... 11

Plaintiff James Bonomo ("Plaintiff" or "Bonomo") submits this memorandum of law in support of his motion for sanctions against the Defendant Mitsubishi International Corporation ("MIC" or "Defendant") for its spoliation of material evidence in this litigation. This motion is further supported by the accompanying declaration of James A. Batson ("Batson Aff.") and the attached exhibits.

## PRELIMINARY STATEMENT

This motion stems from Defendant's failure to preserve, and its destruction of, four sets of contemporaneous handwritten interview notes that Richard Lovell (a Senior Vice President and the Director of Human Resources for Defendant) took during Defendant's internal investigation of allegations that Plaintiff set forth in a Draft Complaint. Although Defendant was unquestionably on notice of the potential for future litigation as of April 13, 2007 (the date Mr. Lovell testified in his deposition that he received a copy of the Draft Complaint), and as early as April 11, 2007 (the date the Draft Complaint was hand delivered to Defendant) Defendant failed to preserve Mr. Lovell's contemporaneous handwritten notes from four of the five interviews that Mr. Lovell conducted after that date.

The destroyed handwritten interview notes comprise critical, relevant evidence, the loss of which warrants the imposition of sanctions. We know this because of the significant variation that exists between the contemporaneous handwritten notes and the typewritten notes (which contain post-interview revisions) for the one interview where Mr. Lovell <u>did</u> retain both sets of his notes. The significant differences between these versions leads to the conclusion that

Mr. Lovell consistently sanitized witness statements in order to create the best possible version of events for Defendant in his final and conclusory Investigative Report (the "Report").

Moreover, when Mr. Lovell was asked (during his deposition on May 13, 2008) about what was said during the four interviews for which he failed to preserve his handwritten notes he repeatedly relied on the accuracy of his typewritten notes to determine what was said during the interviews. (Lovell Tr. 146:25, 147:2-3, 200:4-11, 223:5-6[1]). For example, at one point during his testimony, Mr. Lovell stated, "**I can only go by what I wrote, and what I wrote is what I recollect**." (Lovell Tr. 222:18-21) (Emphasis added). It appears that Mr. Lovell has no meaningful independent recollection of what was actually discussed during the interviews.

Thus, the four sets of Mr. Lovell's contemporaneous handwritten notes that were destroyed, are critical evidence, the spoliation of which has caused substantial harm to Plaintiff.

## THE FACTS

This action concerns the abusive and hostile work environment created by Defendant, because of Plaintiff's race, national origin, and sexual orientation. Plaintiff joined Defendant as the Manager of Paper Sales in its New York, New York office in June 1999. See Compl. ¶ 8. At all relevant times Defendant was aware that Plaintiff is of Italian heritage, and is gay. See Compl. ¶ 27.

In April 2005, Plaintiff traveled to the People's Republic of China with Tetsuya Furuichi, then Mitsubishi Corporation's ("MC")[2] Manager of Communications Papers

---

[1] Excerpts from the deposition of Richard Lovell are attached to the Batson Aff. as Exhibit A.
[2] MIC is a wholly owned subsidiary of MC.

2

worldwide, to meet with a potential customer, Anne Paper Co., Ltd. ("Anne"). See Compl. ¶ 9. Mr. Furuichi, who is Japanese, worked out of MC's Tokyo office and had supervisory authority over Plaintiff, as well as Plaintiff's counterparts in other MIC and MC offices around the world. See Compl. ¶ 10.

On April 6, 2005,[3] after the initial meeting with Anne, Anne's CEO, Arthur Zhang, invited Plaintiff, Mr. Furuichi, and Yue Zhibo, Plaintiff's counterpart at MC's Beijing office, to dinner that evening. See Compl. ¶ 11. After dinner, at approximately 11:00 p.m., Mr. Zhang took everyone to a karaoke bar and nightclub. Before they left the restaurant, Mr. Furuichi stated to Mr. Bonomo, "you will be the target tonight." See Compl. ¶ 12.

Upon leaving the nightclub at approximately 2:00 a.m., Mr. Furuichi announced that everyone was to go to a bathhouse for a massage. See Compl. ¶ 13. Mr. Bonomo told Mr. Furuichi that he would prefer to return to his hotel, since he was very tired, to which Mr. Furuichi responded, "don't worry, it will be a non-sexual massage." See id.

During the drive to the bathhouse, Mr. Furuichi said that he and Mr. Zhibo wanted Mr. Bonomo to come with them to the bathhouse so that they could see him unclothed. See Compl. ¶ 15. Mr. Furuichi then said that "Western" or "non-Japanese" men "have large penises," implying that Asian men have smaller penises. See Compl. ¶ 16. Mr. Furuichi also said that Italian men have penises "down to here," gesturing to his knees. See id.

Upon arriving at the bathhouse, the men were directed to a locker room so that they could shower before receiving a massage, as the bathhouse required. See Compl. ¶ 17. After Plaintiff had fully undressed, Mr. Zhibo grabbed Plaintiff's bicep and made a comment about his "big muscles." See Compl. ¶ 18. Mr. Zhibo then used his cell phone to take a picture

---

[3] Although this specific date was omitted from Plaintiff's Complaint, it was subsequently established in documents and deposition testimony to have been April 6, 2005.

3

of Plaintiff's genitals, which he subsequently refused to delete. See Compl. ¶¶ 19-20. During this incident, Mr. Furuichi stated that Plaintiff's penis looked like an "Italian sausage." See Compl. ¶ 21.

Plaintiff was shocked and humiliated by the actions of Messrs. Furuichi and Zhibo, which left him feeling extremely embarrassed and violated. See Compl. ¶ 22.

Following this incident, Mr. Furuichi repeatedly made false and derogatory comments concerning Plaintiff's performance and management capabilities to others within MIC, which interfered with Plaintiff's ability to develop his career there. See Compl. ¶ 25. Moreover, upon information and belief, Mr. Furuichi played a role in setting Plaintiff's gross profit targets – on which his incentive compensation is based – unreasonably high. See Compl. ¶ 26.

In or around March 2007, Plaintiff learned that Mr. Furuichi was to be transferred to New York to a position with direct supervisory authority over Plaintiff. Consequently, Plaintiff's counsel prepared the Draft Complaint and sent it to MIC. After conducting an investigation of Plaintiff's allegations, MIC informed Plaintiff that his claims were unsubstantiated and that Mr. Furuichi's transfer would go forward as planned. As a result, Plaintiff resigned from his employment on June 22, 2007.

As previously stated, this motion addresses the failure of Defendant to make a reasonable effort to preserve certain critical documents in connection with this litigation. Defendant should have reasonably anticipated litigation when Plaintiff's counsel, Jeffrey Liddle, hand delivered a Draft Complaint to Hitoshi Inada, the General Manager of MIC's Legal Department and James Brumm, MIC's General Counsel on April 11, 2007. (See Batson Aff.,

Ex. B).[4]  Nonetheless, Defendant failed to retain four sets of Mr. Lovell's contemporaneous handwritten notes that he took during the nearly two months after the duty to preserve such material evidence arose.

As a result of Defendant's conduct, which is at a minimum, negligent, these highly relevant, contemporaneous handwritten notes were destroyed.  We seek the Court's intervention in an effort to remedy the harm caused by Defendant's spoliation, in the form of appropriate sanctions, including but not limited to, precluding Defendant from being able to use Mr. Lovell's typewritten notes from those four interviews for which he destroyed the contemporaneous handwritten version, in this litigation.

## ARGUMENT

### I.     Defendant Failed to Meet Its Obligation to Preserve Evidence

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that evidence may be relevant to litigation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). Accordingly, this obligation attaches to evidence that may be relevant to future litigation. See e.g., Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998).

Here, Defendant was aware of the possibility of litigation in this matter when Plaintiff's counsel, Jeffrey Liddle, hand delivered a letter to Hitoshi Inada, the General Manager of MIC's Legal Department and cc'd James Brumm, MIC's General Counsel (who was out of the country at that time) on April 11, 2007, with a copy of a Draft Complaint enclosed.  Mr.

---

[4] Plaintiff's Draft Complaint is identical to the Complaint he filed on June 22, 2007.

Liddle stated in his letter that he would refrain from filing the Complaint until April 19, 2007 in an effort to resolve the matter short of litigation. Mr. Lovell stated during his deposition testimony on May 13, 2008, that he received a copy of the Draft Complaint on or around April 13, 2007. (Lovell Tr. 28:12-14, 21-23). The duty to preserve thus commenced at least as of April 13, 2007, if not as early as April 11, 2007.

On May 10, 2007 Mr. Lovell sent an email to Plaintiff informing him of his duty to preserve all documents and data in his possession, custody or control:

> As a reminder, and as your lawyer had probably already told you, **once a draft claim complaint is mailed that threatens litigation, the parties have an obligation to preserve relevant information...you have an obligation to preserve all documents and data regardless of form**...that relate in anyway [sic] to the facts, claims, defenses etc relative to your draft complaint. The duty to preserve this information covers all devices, records etc. you have in your possession and/or over which you have custody and control whether at home or at work. (See Batson Aff., Ex. C) (Emphasis added).

Following MIC's receipt of the Draft Complaint, and in accordance with MIC policy, Mr. Lovell conducted an investigation of Plaintiff's complaints. As part of his investigation, Mr. Lovell interviewed the following individuals: Mr. Furuichi on April 23, 2007 ("April 23 interview"); Koji Torao, MIC's acting Deputy Department Manager for the General Merchandise Department, on May 7, 2007; Mr. Yue on May 16, 2007; Kenzo Takahashi, the former Senior Vice President of MIC Legal, on May 18, 2007; and a second interview with Mr. Furuichi on June 6, 2007 ("June 6 interview").

During these interviews, Mr. Lovell engaged in a practice of taking contemporaneous handwritten notes, by "[jotting] down" words in short-form, as opposed to complete sentences, and later typing these notes into a "more complete report" either "**that night or the next morning.**" (Lovell Tr. 46:12-18, 48:21-24, 49:4-23) (Emphasis added). Although Mr. Lovell took these contemporaneous handwritten notes during each interview, he stated that he was **unaware of his duty to retain them until late May or early June 2007**, despite being in charge of the integrity of the filing system for MIC's Human Resources Department. (Lovell Tr. 114:2-18, 116:24-25, 117:2-6, 146:12-13).[5] Even more outrageous however, is that Mr. Lovell remained "unaware" of his own duty to preserve evidence, notwithstanding his May 10, 2007 preservation email to Mr. Bonomo. (See Batson Aff., Ex. C). As a result, the only contemporaneous handwritten notes that Mr. Lovell retained were from his June 6 interview with Mr. Furuichi.

As detailed below, Mr. Lovell's contemporaneous handwritten notes from Mr. Furuichi's June 6 interview, (see Batson Aff. Ex. D), reveal significant inconsistencies, variations of prose, and even deletions, when compared to his later typewritten notes from this same interview. (See Baton Aff., Ex. E). Mr. Lovell clearly varies and/or deletes significant prose from his contemporaneous handwritten notes after a period of time has elapsed.

---

[5] During Mr. Lovell's deposition, Mr. Liddle asked him as follows: "[a]ren't you the ultimate person responsible for the integrity of the filing system in the human resources department?" (Lovell Tr. 116:24-25, 117:2-3). Mr. Lovell confirmed that he is responsible for this "[w]ithin HR." (Lovell Tr. 117:4).

7

| General Subject Matter | Mr. Lovell's Contemporaneous Handwritten Notes | Mr. Lovell's Post-Interview Typewritten Notes |
|---|---|---|
| Timing of events on April 6, 2005 | "Chinese dinner eating and drinking (not sure about Bar) over about midnight" | "Furuichi cannot recall the bar but thinks they left the restaurant about 11 or 12" |
| Paragraph 13 of the Draft Complaint | "may have said not sexual massage" | This statement is <u>completely omitted</u> from Mr. Lovell's later typewritten notes. |
| Paragraph 19 of the Draft Complaint | "Does not remember – Mr. Yue may have cell phone. Do not remember – **Yue could have taken picture (prone to act like child)**" (emphasis added) | "He does not remember anything to do with the cell phone or a picture" |
| Paragraph 21 of the Draft Complaint, specifically with respect to the alleged "Italian sausage" statement | "could have said (not at all)" | "Does not recall a statement like this. Again conversations about male genitals are not a topic he would bring up" |

These differences demonstrate Mr. Lovell's blatant editing of his contemporaneous notations from Mr. Furuichi's June 6 interview, not only fabricating complete sentences not otherwise found in the handwritten version, but also completely omitting important and relevant facts when he later typed his notes.

Subsequent to the interviews and completing the investigation, Mr. Lovell used his interview notes to write the Report dated June 12, 2007, which he sent via email to Yasuyuki Sugiura, his supervisor, and the Senior Vice President, CEO, and head of non-trade departments, Mr. Inada, Mr. Brumm, and Diane Knox, in-house counsel for Defendant, on June 22, 2007.[6]

---

[6] In fact, Mr. Lovell testified during his deposition that although Frederic Leffler (Senior Counsel at Proskauer Rose, L.L.P., who was then acting as counsel for MIC) was present for each of the interviews and took contemporaneous

8

(See Batson Aff., Ex. F). Mr. Lovell concluded in his report that he "found no evidence to support Mr. Bonomo's contention that his Italian heritage or sexual orientation was used in any way as a basis for discrimination." (See id.).

II.     **Sanctions Are Warranted Because Defendant Failed to Satisfy Its Document Preservation Obligations**

A party seeking sanctions (including an adverse inference instruction) for the destruction of evidence must establish the following: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[7] See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 93, 106-07 (2d Cir. 2001).

With respect to the first-prong, as discussed in Part I, Defendant had an obligation to preserve evidence by April 13, 2007. Even after April 13 however, Defendant evidenced its awareness of future litigation numerous times, including Mr. Leffler's April 17, 2007 letter to Mr. Liddle, and most notably, Mr. Lovell's May 10, 2007 email to Plaintiff concerning Plaintiff's own retention of documents. However, during this critical time period for preservation, Mr. Lovell destroyed **4 sets** of contemporaneous handwritten notes from his interviews with key individuals—Mr. Furuichi (the April 23 interview only), Mr. Torao, Mr. Yue, and Mr. Takahashi—in response to Plaintiff's Draft Complaint.

---

handwritten notes (which were preserved), he did not review any of Mr. Leffler's prior to drafting the Report, and in fact, saw Mr. Leffler's notes for the first time at his deposition. (Lovell Tr. 112:8-10, 214:19-20).

[7] The moving party must prove relevance when the destruction of evidence is negligent, whereas the moving party does not need to prove this when the destruction was in bad faith (i.e. intentionally or willfully). See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 93, 109 (2d Cir. 2001).

9

With respect to the second-prong, Defendant's destruction of evidence after April 13, 2007 can be accurately described as having been done with a "culpable state of mind." "In this Circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence…Once the duty to preserve attaches, **any destruction of documents is, at a minimum, negligent.**" Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Zubulake IV") (Emphasis added). Here, Mr. Lovell destroyed his handwritten notes from interviews that took place 10 days after the duty to preserve attached, a time when Defendant was unquestionably on notice of its duty to preserve, evidencing blatant negligence.

With respect to the third-prong, the destroyed handwritten notes are relevant to substantiating Plaintiff's allegations. "[T]he prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." Kronisch v. U.S., 150 F.3d 112, 128 (2d Cir. 1998). Here, the contemporaneous handwritten notes that Mr. Lovell took during his interviews with Mr. Furuichi, Mr. Torao, Mr. Yue, and Mr. Takahashi are undoubtedly relevant to substantiating Plaintiff's allegations of the events that occurred in China on April 6, 2005.

In fact, cases in this Circuit where the Court has addressed whether the destruction of contemporaneous handwritten notes warrants an adverse inference instruction where the non-moving party only retained a later, typewritten version of the notes, the Court has made specific reference to evidence in the record establishing that the two versions of notes were identical when denying the request for sanctions. See e.g., Hamilton v. Mount Sinai Hospital, 528 F.Supp.2d 431, 445 (S.D.N.Y. 2007) (holding that while the contemporaneous handwritten notes were irrelevant in the first instance because there was a surveillance tape substantiating the

10

incident in question, "the only evidence in the record as to the contents of these notes is that they are **identical** to the typewritten version"); see also Whitney v. Jet Blue Airways Corp., 2008 WL 2156324, at *6 (E.D.N.Y. April 29, 2008) ("The Court credits defendant's assertion that under its procedures, the information in the destroyed handwritten [inflight irregularity report "IIR"] **would have been entered word for word** into the complete electronic IIR..."). (Emphasis added).

Here, as discussed in Part I, the four sets of contemporaneous handwritten notes that Mr. Lovell destroyed, were from the interviews of key players tied to the allegations in Plaintiff's Complaint. These handwritten notes are relevant to substantiating Plaintiff's claims, as this case centers around the recollections of these individuals as to the events at issue. There is no evidence in the record reflecting that Mr. Lovell's typewritten notes are in any significant way identical to his contemporaneous handwritten notes, and in fact, the record reflects that Mr. Lovell significantly altered his typewritten notes to create a more favorable version of events for Defendant. As a result, Plaintiff is entitled to sanctions, having met each of the three-prongs discussed above.

## CONCLUSION

Plaintiff respectfully requests appropriate sanctions, including but not limited to this Court precluding Defendant's from being able to use at trial Mr. Lovell's typewritten notes from the interviews of Mr. Furuichi (the April 23 interview only), Mr. Torao, Mr. Yue, and Mr. Takahashi, (see Batson Aff., Ex. G), the costs of this motion, and such other and further relief as this Court deems appropriate.

12

In the event the Court determines that more information is needed before an appropriate sanction can be determined, Plaintiff asks that an evidentiary hearing be held.

Dated: New York, New York
June 10, 2008

>Respectfully submitted,
>
>LIDDLE & ROBINSON, L.L.P.,
>
>By: /s/ Jeffrey L. Liddle
>Jeffrey L. Liddle
>jliddle@liddlerobinson.com
>James A. Batson
>jbatson@liddlerobinson.com
>Christine A. Palmieri
>cpalmieri@liddlerobinson.com
>Amy L. Stutius*
>astutius@liddlerobinson.com
>*not yet admitted in this Court
>800 Third Avenue
>New York, New York 10022
>(212) 687-8500

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 10th day of June, 2008, a true and accurate copy of the attached MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT was served by ECF upon the following:

> Stephen P. Sonnenberg, Esq.
> Paul, Hastings, Janofsky & Walker, L.L.P.
> 75 East 55th Street
> New York, New York 10022

> /s/Michael E. Grenert
> Michael E. Grenert
> mgrenert@liddlerobinson.com
> Liddle & Robinson, L.L.P.
> 800 Third Avenue
> New York, New York 10022
> (212) 687-8500

13