STEPHEN P. SONNENBERG
GLENN S. GRINDLINGER
ALISON R. KIRSHNER
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES BONOMO,

                Plaintiff,

      - against -

MITSUBISHI INTERNATIONAL
CORPORATION,

                Defendant.

---

07 Civ. 5967 (CM)

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

    A.    Background.........................................................................................................2

    B.    Plaintiff's Belated Complaint Of Harassment ......................................................2

    C.    MIC's Investigation .............................................................................................3

    D.    Mr. Lovell's Interview Notes ...............................................................................5

    E.    Discovery..........................................................................................................11

ARGUMENT...........................................................................................................................11

    A.    Mr. Lovell's Decision To Discard Certain Handwritten Notes Was At Worst Negligent...............................................................................................12

    B.    There Is No Evidence That Plaintiff Has Been Prejudiced By The Loss Of The Notes........................................................................................................15

CONCLUSION ......................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Sotheby's Inc. Severance Plan,*
　No. 04 Civ. 8180 (SAS), 2005 WL 2583715 (S.D.N.Y Oct. 11, 2005) .............................12, 13

*Hamilton v. Mount Sinai Hospital,*
　528 F. Supp. 2d 431 (S.D.N.Y. 2007) ................................................................................13

*Kronish v. United States,*
　150 F.3d 112 (2d Cir. 1998) ..............................................................................................15

*Mitchell v. Fishbein,*
　No. 01 Civ. 2760, ( JGK) (GWG), 2007 WL 3256859 (S.D.N.Y. Nov. 2, 2007)....................17

*O'Dell v. Trans World Entertainment Co.,*
　153 F. Supp. 2d 378 (S.D.N.Y. 2001) ................................................................................15

*Residential Funding Corp. v. DeGeorge Financial Corp.,*
　306 F.3d 1999 (2d Cir. 2002) ............................................................................................15

*Sandata Techs., Inc. v. Infocrossing, Inc.,*
　Nos. 05 Civ. 09546 (LMM), 06 Civ. 01896 (LMM) (THK), 2007 WL 4157163 (S.D.N.
　Nov. 16, 2007).................................................................................................................12, 17

*Whitney v. JetBlue Airways Corp.,*
　No. 07-CV-1397 (CBA), 2008 WL 2156324 (E.D.N.Y. April 29, 2008)...........................12, 17

*Woodward v. Ameritech Mobile Communications,*
　No. IP 98-0744-C H/G, 2000 WL 680415 (S.D. Ind. Mar. 20, 2000) ......................................16

*Zubulake v. UBS Warburg LLC,*
　220 F.RD. 212 (S.D.N.Y. 2003) .......................................................................................12, 15

Defendant Mitsubishi International Corporation ("MIC") submits this memorandum of law in opposition to Plaintiff James Bonomo's motion for sanctions for what he claims is spoliation of material evidence. This opposition is further supported by the accompanying affirmation of Stephen Sonnenberg, Esq. ("Sonnenberg Aff.") and its attached exhibits.

## PRELIMINARY STATEMENT

Plaintiff's motion for sanctions is nothing more than a strategic attack, with no merit whatsoever, intended to discredit one of MIC's principal witnesses and MIC's investigation of his extremely belated complaint of harassment. Plaintiff waited two full years to report his allegations of harassment by colleagues (in the form of a draft complaint delivered by his attorney), failed to participate in MIC's investigation after imposing unreasonable preconditions, and then filed this lawsuit. He now asks the Court to impose extreme sanctions on MIC because the lead investigator mistakenly discarded three sets of incomplete "scribble" that preceded his creation of complete witness interview notes. The Court should not reward Plaintiff's tactics.

MIC's Director of Human Resources, Richard Lovell, conducted a number of interviews in an attempt to investigate Plaintiff's belated allegations of harassment. He took minimal handwritten notes during the interviews – just "scribble" as he called it – and then incorporated the notes into a comprehensive and detailed typewritten summary of the interview. He prepared the typewritten summaries within hours of each interview, and then discarded some of his original "scribble." Plaintiff employs quite a bit of rhetoric in his attempt to portray Mr. Lovell's actions as malicious attempts to hide the truth, but the reality is that Mr. Lovell genuinely believed that his short-hand notes were incomplete, duplicative, and not covered by his obligation to preserve relevant documents – an obligation that he took seriously. Plaintiff has no evidence to the contrary. Moreover, Plaintiff cannot show that he has been prejudiced by Mr. Lovell's failure to retain the initial short-hand notes. MIC produced Mr. Lovell's *complete*

notes, in their entirety, months ago. Instead, it is clear that Plaintiff's request for sanctions is simply a strategic diversion from the merits (or lack thereof) in his case.

Neither the facts of this case, nor the law applicable to Plaintiff's motion, justify imposing sanctions against MIC under these circumstances.

## STATEMENT OF FACTS

### A.    Background

MIC, a subsidiary of Mitsubishi Corporation, is a diversified trading company. One of MIC's many business groups is the Living Essentials Group, which includes MIC's paper and packaging business. MIC hired Plaintiff as its Manager, Paper Sales in its New York office in June 1999. He remained in that position until he resigned his employment with MIC in June 2007.

Plaintiff is of Italian heritage and is gay. Contrary to the allegations in his moving papers, though, it is not clear that any of the other MIC employees implicated in this case were aware of Plaintiff's sexual orientation until shortly before he resigned. Indeed, the vast majority of the "facts" that Plaintiff sets forth in his moving papers consist only of Plaintiff's unsubstantiated allegations against MIC, as evidenced by the fact that he relies solely upon his own Complaint for support. This is not the time or motion for MIC to dispute Plaintiff's allegations – suffice it to say that MIC denies any unlawful conduct. The key facts relevant to this motion are those pertaining to Richard Lovell's investigation into the draft legal complaint of discrimination that Plaintiff submitted to MIC in April 2007. Plaintiff omits many of these facts from his moving papers.

### B.    Plaintiff's Belated Complaint Of Harassment

This litigation revolves around events that Plaintiff alleges occurred on or about April 6, 2005 during a business trip to China. Plaintiff claims that Tetsuya Furuichi (of Mitsubishi

Corporation in Tokyo) and Yue Zhibo (of Mitsubishi Corporation China Commerce Company in

Beijing) subjected him to inappropriate comments and conduct of a juvenile nature following a

business dinner that evening. Despite allegedly feeling "shocked and humiliated" by the events

of the evening, Plaintiff continued on the business trip for four more days without saying a word

to either MIC or to his domestic partner of twenty years. In fact, despite being fully aware of

MIC's anti-harassment policies and procedures, Plaintiff failed to so much as mention the events

of that evening to anyone at MIC until two years later when his attorney delivered a draft copy of

his lawsuit to MIC's legal department on April 11, 2007, with a "promise" to "refrain from filing

the complaint" for only one week.[1]

## C.    MIC's Investigation

Upon receiving the draft complaint, MIC immediately commenced an internal

investigation.[2] Mr. Lovell conducted a total of five interviews, including two with Mr. Furuichi

and one with Mr. Zhibo, as follows:

---

[1] Plaintiff testified during his deposition that he received MIC's employee handbook in October 2001, and was familiar with MIC's anti-discrimination and anti-harassment policies, as well as MIC's complaint procedures (including a 24-hour compliance hotline and internet reporting site). Plaintiff also testified that, despite knowing how to lodge a complaint, he chose not to complain about the alleged April 2005 events until two years later. (Sonnenberg Aff., Ex A, Deposition Transcript of James Bonomo dated November 9, 2007 (hereinafter "Bonomo Tr.") at 46:6 – 47:23.)

[2] Because of the unusual manner in which Plaintiff lodged his legal complaint of discrimination with MIC, the Company was placed in the unique situation of having to conduct dual simultaneous investigations: (1) an internal factual investigation by its Human Resources department in response to Plaintiff's allegations, and (2) an investigation by legal counsel in anticipation of litigation and to advise MIC on strategy in response to the draft complaint. Plaintiff acknowledges the unique and unusual nature of the circumstances requiring dual investigations. (See Sonnenberg Aff. Ex. B, correspondence from Jeffrey L. Liddle, dated May 24, 2007 ("This is not a standard investigation. Had it not been for the fact that Mr. Bonomo hired counsel, and we provided MIC with a draft Complaint detailing the incident, no interview would be taking place."); Ex. C, correspondence from Christine A. Palmieri, dated May 24, 2007 ("MIC's investigation cannot be conducted in 'the usual manner' because this is not a usual set of circumstances."). Outside counsel (Frederic Leffler, Esq. of Proskauer Rose

| April 27, 2007 | Mr. Furuichi | Sonnenberg Aff., Ex. D. |
|---|---|---|
| May 7, 2007 | Koji Torao, MIC's Deputy Department Manager for the General Merchandise Department, who was in a position similar to Plaintiff's | Sonnenberg Aff., Exs. E & F. |
| May 16, 2007 | Mr. Yue | Sonnenberg Aff., Ex. G. |
| May 18, 2007 | Kenzo Takahashi, then Senior Vice President of the Living Essentials Group, who was Plaintiff's direct supervisor | Sonnenberg Aff., Ex. H. |
| June 6, 2007 | Mr. Furuichi | Sonnenberg Aff., Exs. I & J. |

Mr. Lovell also reviewed e-mail correspondence between Plaintiff and others in order to gather any additional information relevant to Plaintiff's allegations. (Sonnenberg Aff., Ex. K.) The one thing Mr. Lovell and MIC did not do was interview Plaintiff – for the simple reason that Plaintiff obstructed and refused to participate in the investigation of his own complaint. In fact, over a period of five weeks, Mr. Lovell and MIC made repeated attempts to convince Plaintiff to cooperate with the investigation. Plaintiff initially refused to be interviewed unless MIC allowed his attorney to be present (and gave him permission to confer privately with the attorney at any time), recorded the interview (but agreed not use the recording for any other purpose), and agreed to limit the topics of discussion (excluding questioning by MIC as to why Plaintiff did not report the alleged harassment for two years). (Sonnenberg Aff., Ex. L.) Even though MIC agreed to most of Plaintiff's demands, he ultimately refused to be interviewed altogether.

Mr. Lovell proceeded with his investigation despite Plaintiff's obstruction. On June 12, 2007, Mr. Lovell summarized his findings in a detailed, 10-page report. Mr. Lovell concluded his report as follows:

---

LLP) assisted Mr. Lovell with his investigation and was present during each of Mr. Lovell's witness interviews. MIC's in-house counsel, Diane Knox, Esq., joined two of Mr. Lovell's witness interviews.

> Absent Mr. Bonomo's participation in the investigation and evidence to
> the contrary, I find no basis for retaliation. Because Mr. Bonomo failed to
> bring his complaint to anyone's attention prior to April 2007, I do not see
> how retaliation could have been a motive as none of the people with
> whom I spoke or who could have impacted his bonus, salary, performance
> appraisals or working environment were aware of any discrimination
> complaints that Mr. Bonomo has made, as far as I know. In addition, I
> find no evidence of discrimination based on his being a gay, Italian male.
> While people knew of his Italian heritage, no one with whom I spoke
> knew that he is gay. In any event, whether known or not, I found no
> evidence to support Mr. Bonomo's contention that his Italian heritage or
> sexual orientation was used in any way as a basis for discrimination.

(Sonnenberg Aff., Ex. K.) Although Plaintiff quotes from the report in his moving papers, he

omits any mention of his two-year delay in complaining, followed by his refusal to participate in

MIC's investigation.

**D.    Mr. Lovell's Interview Notes**

At deposition, Mr. Lovell testified at length about his investigation, including the process

he followed in conducting and recording interviews. In fact, Plaintiff's counsel questioned

Mr. Lovell for several hours about the details of his investigation.

During his first four interviews, Mr. Lovell took handwritten notes that he described as

"scribble" and "basically words that I jotted down . . . there were full sentences here and there

but not much." (Sonnenberg Aff. Ex. M, Deposition Transcript of Richard Lovell dated May 13,

2008 (hereinafter "Lovell Tr.") at 49:4-7; 113:3-9.) Following each interview, Mr. Lovell typed

a more detailed summary while the interview was still fresh in his mind. He testified that he

prepared the complete interview summaries "soon after the interview . . . that night or the next

morning."[3]  (Lovell Tr. 49:8-23.)

---

[3] Mr. Lovell sent his typewritten summaries to Mr. Leffler in "draft" form after each interview so
as to give Mr. Leffler an opportunity to tell him if he believed the notes omitted or misstated
anything. Mr. Leffler did not make any changes to the summaries, so the "draft" versions were
the final versions. (Lovell Tr. 117:9-118:2.) Mr. Lovell did not review any notes taken by Mr.
Leffler. (Lovell Tr. 112:3-13.)

After completing the detailed summaries – and believing that these summaries incorporated the entirety of his "scribble" and the interviews – Mr. Lovell discarded some of his original handwritten notes. Specifically, he discarded the notes he took during Mr. Furuichi's first interview (April 23rd), and during the interviews of Mr. Yue (May 16th) and Mr. Takahashi (May 18th).[4] At the time, Mr. Lovell was aware that MIC was under an obligation to retain documents pertaining to Plaintiff's allegations, but did not understand this obligation to extend to his incomplete, handwritten notes. Mr. Lovell testified that he did not think his "scribble" qualified as a "document" within the meaning of MIC's document retention notice. (Lovell Tr. 112:21-113:9.) Instead, Mr. Lovell understood his retention obligation to include only his complete notes (his "end product" or "working document"), as well as other records from his investigation, until he was told otherwise. (Lovell Tr. 48:16-24; 112:21-114:18.)

Mr. Lovell testified that he first realized that he should keep his handwritten notes in late May or early June 2007, when he had a conversation with MIC's in-house counsel, Diane Knox. (Lovell Tr. 113:21-114:18.) After this conversation, Mr. Lovell conducted one more interview (Mr. Furuichi's second interview), and intentionally retained both his handwritten and typewritten notes. Mr. Lovell testified that he took *more* comprehensive handwritten notes during this last interview than he had earlier because he understood that the notes now would become part of the investigation file and he thought they "should make some sense." (Lovell Tr. 188:9-189:18.) Mr. Lovell kept his remaining handwritten notes and all of his typewritten summaries in an investigation file that he produced in full in connection with this litigation. Mr. Leffler and Ms. Knox retained and produced their notes as well.

---

[4] Mr. Lovell did retain his handwritten notes of his interview with Mr. Torao on May 7, 2007. Thus, he discarded a total of three sets of handwritten notes – not four, as Plaintiff claims in his moving papers.

Plaintiff now makes much ado about what he describes as "significant" differences between Mr. Lovell's handwritten and typewritten notes of Mr. Furuichi's second interview on June 6, 2007.  Plaintiff argues that these differences in documents that MIC has readily produced reveal "blatant editing" and an effort on Mr. Lovell's part to somehow create a more favorable version of events for MIC.  Plaintiff is wrong on both points.

Mr. Lovell's handwritten and typewritten notes of Mr. Furuichi's second interview are remarkably similar.  In fact, Plaintiff identifies only four variations, none of which qualify as substantive or material.  (Pl. Mot. at 8.)  The variations, presented in the same order as in Plaintiff's moving papers, are as follows:

| Handwritten Notes | Typewritten Summary | Comments |
|---|---|---|
| "Ann meeting and plant tour. Then Chinese dinner eating and drinking (not sure about Bar) over about midnight" | "After a plant tour of Anne they went to dinner with Mr. Zhang for an evening of drinking (as is custom Mr. Zhang planned the restaurant etc). They went in Mr. Zhang's car (he drove) along with Furuichi, Yue, and Jim. Furuichi cannot recall the bar but thinks they left the restaurant about 11 or 12" | *Refers to general sequence of events on April 6, 2005.*<br><br>These statements are substantively consistent.  Moreover, it is hardly material whether the group finished dinner at 11 or 12 that night.  In context, the differences between the notes are neither helpful nor harmful to MIC. |

| | | |
|---|---|---|
| "#13/14 - Does not remember time – does not remember Jim saying very tired – if insists he would have gone back to hotel – may have said not sexual massage – bathhouse close to hotel" | "#13/14 – Furuichi san does not recall the exact time or if they went to the bath house from dinner or Karaoke. He does not recall any specific conversations including Jim being insistent on returning to the hotel. He thinks that if that occurred he would have let Kim go back to the hotel (actually hotel was not so far from the restaurant, bathhouse etc so dropping Jim off not an issue)." | *Refers to allegations in paragraphs 13 and 14 of Plaintiff's draft complaint.*<br><br>Mr. Lovell's notes reflect that Mr. Furuichi told him that he does not recall Plaintiff resisting going to the bathhouse. Mr. Furuichi's speculation (while reviewing portions of the draft complaint) that he "may have" said something to reassure Plaintiff about the nature of the massages the group would receive is not material. *See Lovell Tr. 180:18-180:23; 195:13-196:6; 196:11-15; 201:2-204:19.* In context, the differences between the notes are neither helpful nor harmful to MIC. |
| "#19 – Does not remember – Mr. Yue may have cell phone – do not remember – Yue could have taken picture (prone to act like child)" | "#19 – He does not remember any thing to do with the cell phone or a picture." | *Refers to allegations in paragraph 19 of Plaintiff's draft complaint.*<br><br>Mr. Lovell's notes reflect that Mr. Furuichi repeatedly told him that he does not recall anything having to do with a cell phone or picture in the locker room at the bathhouse. Mr. Furuichi's speculation (again, while reviewing portions of the draft complaint) that Mr. Yue "could have" taken a picture because he sometime acts like a child is not material, particularly given that it followed clear denials of any recollection of such a thing actually occurring. *See Lovell Tr. 201:2- 204:19; 217:11-219:10.* In context, the differences between the notes are neither helpful nor harmful to MIC. |

| "#21 – Could have said – (not at all)" | "#21 – Does not recall a statement like this. Again, conversations about male genitals are not a topic he wou bring up." | *Refers to allegations in paragraph 21 of Plaintiff's draft complaint.*<br><br>Mr. Lovell's handwritten notes on this point are incomprehensible without reference to his more detailed summary. There is nothing to indicate that the substance his typewritten version conveys is any different that what he meant to convey by his handwritten note. In context, the differences between the notes are neither helpful nor harmful to MIC. |
|---|---|---|

The primary differences with which Plaintiff takes issue clearly arise in the context of

Mr. Furuichi speculating as to what people might have said or done after he repeatedly stated –

during two separate interviews – that he had no recollection of the inappropriate comments or

conduct alleged in the draft complaint. (Lovell Tr. 201:2- 204:19.)  In fact, Plaintiff fails to

acknowledge the following note included in the margins of Mr. Lovell's handwritten notes of the

second interview of Mr. Furuichi:

> On several points above when pressed [Furuichi] did not recall at all and
> was trying to think in what context something may have happened if in
> fact it did - #12, 16, 19, 20.

(Sonnenberg Aff., Ex. J.)  Mr. Lovell further explained in his final investigation report (page 6):

> NOTE – In the second part of the second interview when Mr. Furuichi was
> looking at the allegations, he began raising hypotheticals around the
> comments Mr. Bonomo alleged in his draft complaint.  Somewhere around
> point 21 I asked Mr. Furuichi whether he actually remembered these
> things or was taking guesses as to why something may have happened, if it
> happened.  Bottom line, he has no specific recollection of any event
> occurring at the bathhouse to which Mr. Bonomo objected or voiced
> displeasure.  He only recalls that they went to a bathhouse, they got a
> massage and everyone seemed fine.  This lack of recollection is very
> consistent with the first interview and the first part of the second interview
> and his initial responses on the point by point in the draft complaint.

(Sonnenberg Aff., Ex. K.)

Finally, Plaintiff fails to point out a number of places in Mr. Lovell's typewritten summary where he includes <u>additional</u> information that is arguably more favorable <u>to Plaintiff</u> than his handwritten notes. For example, on page 2 of the typewritten notes, Mr. Lovell writes, "Furuichi san (half jokingly) that he thinks everyone hates him [sic]." Similarly, on page 3, Mr. Lovell writes, "Overall in 2006 Furuichi did not travel much as he . . . was very busy." Neither of these statements is included in Mr. Lovell's handwritten notes. In fact, it is clear from even a cursory review of the two sets of notes that the typewritten version is more lengthy and complete than Mr. Lovell's contemporaneous notes (even though he tried to make those notes more comprehensive than "scribble" he took down during earlier interviews). This contrast between the two sets of notes is further evidenced by Mr. Lovell's notes from his interview with Mr. Torao, which he took before his conversation with Ms. Knox. Moreover, it should be apparent from all of Mr. Lovell's typewritten notes that they do not convey a "sanitized" version of events, as each contains details that arguably are favorable to Plaintiff.

Plaintiff's attempt to spin immaterial differences between Mr. Lovell's handwritten and typewritten notes of one interview into evidence of some sort of cover-up justifying sanctions is unreasonable, to say the least. Rather, a fair comparison of the handwritten notes and typewritten summary makes clear that: (1) the differences between Mr. Lovell's handwritten and typewritten notes are not substantive; (2) Mr. Lovell created both sets of notes when the interviews were fresh in his mind; (3) neither set of notes is akin to a transcript, but instead reflect Mr. Lovell's perceptions of what was said or otherwise conveyed to him during the interview; and (4) Mr. Lovell's typewritten notes are neither more nor less helpful to MIC, except to the extent that they elucidate handwritten notes that are otherwise incomplete and difficult to decipher.

**E.    Discovery**

MIC has provided Plaintiff with extensive discovery from the outset of this litigation. MIC produced over 1,600 documents, totaling over 8,700 pages. In order to do so, MIC had to preserve and search email and electronic data maintained by a number of custodians, which necessitated a very expensive and time-consuming review of thousands of documents in Japanese and Chinese. MIC also provided Plaintiff with translations of over 600 Japanese documents.

MIC also has been more than accommodating of Plaintiff's requests to depose MIC's employees. First, MIC agreed to waive the procedures of the Hague Convention and to allow Plaintiff to depose Mr. Yue (who is resident in Beijing) in Hong Kong because depositions are not permitted in Mainland China. Second, MIC agreed, without objection, to allow Plaintiff to depose Mr. Furuichi for a second full day. Third, MIC agreed, without objection, to allow Plaintiff to depose Mr. Leffler (counsel with Proskauer Rose LLP, who assisted Mr. Lovell in his investigation). Finally, in response to Plaintiff's request to depose Hideki Takahashi (who resides in Japan), MIC agreed to make him available for deposition pursuant to the applicable rules and procedures for taking depositions in Japan. The time for Plaintiff to depose Mr. Takahashi has elapsed.

In short, neither MIC nor any of its employees has done anything to impede Plaintiff's ability to litigate his case. To the contrary, MIC and its employees have been nothing if not cooperative and forthcoming.

## ARGUMENT

A party seeking sanctions based on the alleged spoliation of evidence must establish three things: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind;" and

(3) that the destroyed evidence was "relevant" to the moving party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180 (SAS), 2005 WL 2583715, at *3 (S.D.N.Y Oct. 11, 2005). In *Zubulake v. UBS Warburg LLC*, 220 F.RD. 212 (S.D.N.Y. 2003) – a case litigated by Plaintiff's counsel – the court made clear that the appropriate sanction for spoliation, if any, must be made on a case-by-case basis. *Zubulake*, 220 F.R.D at 216. The court also made clear that an adverse inference instruction is an "extreme sanction for spoliation and should not be given lightly." *Id.* at 220. Even more severe sanctions, including dismissal or preclusion of evidence, are reserved for the most egregious cases of spoliation.

It is unclear what qualifies as a "culpable state of mind" in the Second Circuit, with some courts requiring a showing of bad faith, some requiring proof of intentional destruction, and others inferring culpability from gross negligence. *Whitney v. JetBlue Airways Corp.*, No. 07-CV-1397 (CBA), 2008 WL 2156324, at *3 (E.D.N.Y. April 29, 2008) (citations omitted). What is clear is that mere negligence alone – without proof of prejudice to the moving party – will not justify the extreme sanctions Plaintiff seeks by this motion. *See Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 09546 (LMM)(THK), 06 Civ. 01896 (LMM)(THK), 2007 WL 4157163, at *12 (S.D.N.Y. Nov. 16, 2007).

Neither the facts of this case, nor the law applicable to this motion, merit imposing sanctions of any kind against MIC as a result of Mr. Lovell's innocent failure to retain all of his handwritten notes.

## A.  Mr. Lovell's Decision To Discard Certain Handwritten Notes Was *At Worst* Negligent

Mr. Lovell testified that he did not understand that he was under an obligation to retain what he considered to be duplicative handwritten notes (because they were incorporated into

more detailed typewritten summaries), and Plaintiff has no proof that this understanding – even if mistaken – was anything but genuine. Thus, at worst, Mr. Lovell was negligent in failing to retain all of his handwritten notes. *See Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431 (S.D.N.Y. 2007) (suggesting that culpability may not exist where handwritten notes were put into typewritten form and the party destroying the original handwritten notes had no reason to think that he or she was destroying notes that ultimately would be useful to anyone); *Anderson*, 2005 WL 2583715 at *4 (finding that witness' routine destruction of handwritten meeting notes after she prepared a typewritten report did not constitute bad faith or gross negligence).

Plaintiff argues that Mr. Lovell's failure to retain his notes evidences "blatant negligence" on his part. (Pl. Mot. at 10.) It is unclear what degree of culpability Plaintiff actually means to assign to Mr. Lovell's actions but, in any event, Plaintiff supports his accusations by pointing only to the minor, insignificant differences between Mr. Lovell's handwritten and typewritten notes of the second Furuichi interview, and an email from Mr. Lovell to Plaintiff dated May 10, 2007, in which Mr. Lovell reminded Plaintiff of the duty to preserve relevant documents.

As set forth above, there is no reasonable basis for concluding from Mr. Lovell's notes of the second Furuichi interview that his intent was to hide damaging information or to manipulate his investigation in any way. There is no meaningful difference between the two sets of notes. Indeed, a fair comparison of the notes belies Plaintiff's claim that Mr. Lovell "sanitized" the handwritten version, and Plaintiff's suggestion that Mr. Lovell also "fabricated complete sentences" in the typewritten version is complete nonsense. Mr. Lovell testified repeatedly that his handwritten notes were just "scribble" that he referred to in creating his more comprehensive typewritten notes. The fact that the typewritten notes contain full sentences that do not appear in

the handwritten notes is evidence that Mr. Lovell did precisely what he said he did. More importantly, the fact that Mr. Lovell prepared his notes in this manner, knowing that, with regard to Mr. Furuichi's second interview, both sets would be retained as part of the investigation file and that they likely would be scrutinized, is proof that he had no intent to hide or manipulate anything. Plaintiff's attempt to argue otherwise is an example of the tortured logic and distortions of fact underlying this motion.

A comparison of Mr. Lovell's handwritten and typewritten notes of his interview with Mr. Torao (which he readily produced) also belies the existence of any cover-up. (Sonnenberg Aff., Exs. E & F.) The notes corroborate Mr. Lovell's testimony as to the process he followed during the investigation prior to his conversation with Ms. Knox – jotting down short-hand notes during the interview, and then preparing a more detailed and usable typewritten summary shortly after the interview concluded. Like the two sets of Furuichi notes, the Torao notes are entirely consistent, and perhaps even better evidence the cursory nature of Mr. Lovell's contemporaneous note-taking. The fact that Plaintiff ignores the handwritten Torao notes altogether (even blatantly misrepresenting to the Court that they were destroyed) is telling.

Mr. Lovell's May 10, 2007 email to Plaintiff is no more incriminating. Nothing in the email suggests awareness on Mr. Lovell's part of any obligation to preserve incomplete and duplicative documents, which is how Mr. Lovell viewed the handwritten notes. Mr. Lovell understood his retention obligation to include only his complete notes (his "end product" or "working document"), as well as other records from his investigation, until Ms. Knox told him otherwise. (Lovell Tr. 48:16-24; 112:21-114:18.) Mr. Lovell may well have been mistaken, but his explanation is credible and Plaintiff provides no basis for inferring any degree of recklessness or bad faith. To the contrary, that fact that Mr. Lovell sent the email in the first place illustrates

that he took his obligation seriously and that his intent was to preserve all information relevant to Plaintiff's complaint. Mr. Lovell's failure to retain his own notes was, at worst, negligent.

**B.** **There Is No Evidence That Plaintiff Has Been Prejudiced By The Loss Of The Notes**

Because Mr. Lovell's failure to retain all of his notes was at most careless, Plaintiff bears the burden of demonstrating not only that Mr. Lovell destroyed "relevant" evidence, as that term is ordinarily understood, but also that a reasonable trier of fact could find that the missing notes would actually support his claims. As the *Zubulake* court explained, "this corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." 220 F.R.D. at 221 (noting that the same is true in cases of gross negligence or recklessness).

This case is a far cry from many of those cited in Plaintiff's moving papers, where one party withheld or destroyed volumes of potentially relevant documents, leaving the other with no clue as to what helpful information might have been lost. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 1999 (2d Cir. 2002) (plaintiff failed to produce a number of email back-up tapes in time for trial); *Kronish v. United States*, 150 F.3d 112 (2d Cir. 1998) (defendant destroyed entire case files). In fact, Mr. Lovell's handwritten notes hardly constitute "critical evidence" on the issues to be decided in this litigation: (1) whether Plaintiff was in fact harassed in April 2005, or discriminated and retaliated against during the next two years despite his failure to bring the alleged harassment to anyone's attention, and (2) whether Plaintiff's resignation on the same day he filed his complaint constituted a constructive discharge.

Plaintiff's refusal to cooperate with MIC's investigation precludes him from now claiming that the company's complaint procedure or investigation was inadequate. *See O'Dell v. Trans World Entm't Co.*, 153 F. Supp. 2d 378 (S.D.N.Y. 2001) (granting summary judgment in

favor of employer; plaintiff's refusal to participate in employer's investigation of alleged sexual harassment was "patently unreasonable," even where she directed employer to her attorney); *see also Woodward v. Ameritech Mobile Commc'ns*, No. IP 98-0744-C H/G, 2000 WL 680415 (S.D. Ind. Mar. 20, 2000) (granting summary judgment in favor of employer; plaintiff's failure to utilize complaint procedure and refusal to participate in employer's investigation satisfied employer's affirmative defense, even where plaintiff's refusal was on advice of counsel). Accordingly, because Plaintiff is precluded from challenging the investigation, he cannot possibly be prejudiced by Mr. Lovell's failure to retain his handwritten notes. In any event, in light of the substantial evidence that *does* exist pertaining to MIC's investigation, it would be unreasonable to ignore Plaintiff's own delay in lodging any form of complaint and subsequent refusal to participate in the investigation, and to then conclude that *the company's* response was inadequate.

Plaintiff's claim of prejudice with respect to the substance of Mr. Lovell's interviews also falls short. Plaintiff has not (and cannot) refute Mr. Lovell's testimony that he not only incorporated the substance of his handwritten notes into his typewritten summary, but that his typewritten summaries are actually more detailed and comprehensive than the "scribble" that made up his handwritten notes. Mr. Lovell prepared the typewritten summaries very shortly after each interview, while the information he learned was still fresh in his mind. Plaintiff's attempt to manufacture a disconnect between Mr. Lovell's handwritten and typewritten notes, by characterizing the former as "contemporaneous" and the latter as having been prepared "after a period of time elapsed," simply does not hold water. Moreover, Mr. Lovell's notes are not Plaintiff's only means of discovering what the interviewees had to say. In fact, MIC produced Mr. Leffler's and Ms. Knox's notes from the interviews, and Plaintiff has deposed three of the

four witnesses (including *two days* with Mr. Furuichi) regarding the underlying events in 2005, as well as both Mr. Lovell and Mr. Leffler.[5]  The reality is that Plaintiff has gathered volumes of documents and taken testimony from a number of witnesses, all of which provides him with the same or better information than was contained in Mr. Lovell's handwritten notes.  As in *Sandata Technologies* – another convenient omission from Plaintiff's moving papers – at most the missing notes might have had some minimal impeachment value.  2007 WL 4157163 at *12 (denying request for sanctions after plaintiff's expert witness discarded certain handwritten notes).  It is difficult to see, however, that Plaintiff actually has been prejudiced at all.

Finally, Plaintiff's suggestion that it matters that Mr. Lovell's typewritten summaries are not identical to his handwritten notes misses the point.  According to Plaintiff's logic, anything short of stenography on Mr. Lovell's part is dishonest and prejudicial.  However, it makes no sense that the two sets of notes would be identical, and the law does not require this.  *See, e.g., Whitney*, 2008 WL 2156324 at *5-6 (denying spoliation sanctions; finding that although three versions of a report were slightly different in wording and structure, the substance was the same and there was nothing indicating that the original handwritten version would have corroborated plaintiff's version of events); *Mitchell v. Fishbein*, No. 01 Civ. 2760 ( JGK)(GWG), 2007 WL 3256859, at *2 (S.D.N.Y. Nov. 2, 2007) (denying spoliation sanctions; noting that the only evidence before the court was the alleged spoliator's claim that he incorporated lost interview

---

[5] Plaintiff's unsubstantiated claim that Mr. Lovell has "no meaningful independent recollection" of what was actually discussed during the interviews is patently false.  Mr. Lovell specifically testified that the vast majority of his deposition testimony was in fact based upon his own recollection of events.  (Lovell Tr. 146:14-147:21.)  Moreover, the quote that Plaintiff attributes to Mr. Lovell – "I can only go by what I wrote" – arose in the context of Plaintiff's counsel pressuring Mr. Lovell to explain the differences between his notes and those taken by Mr. Leffler (which he had never seen before).  (Lovell Tr. 222:2-21.)  Indeed, Plaintiff's counsel spent much of Mr. Lovell's deposition asking him questions about the investigation and the underlying facts without referring Mr. Lovell to his notes.

notes into subsequent letters and the moving party's "speculation and supposition" that the notes were unfavorable).

In sum, even if Mr. Lovell's failure to retain all of his handwritten notes was negligent under the circumstances (which MIC does not concede), there is no evidence whatsoever suggesting that the notes would have supported Plaintiff's claims or that he has been prejudiced in any way as a result of their loss.

## CONCLUSION

After not complaining about alleged harassment for two years, Plaintiff tried hard to sabotage MIC's investigation.  Plaintiff's tactics – another attack on MIC's investigation – should not be rewarded.  For the foregoing reasons, MIC respectfully submits that sanctions are neither necessary nor warranted in this case, and that Plaintiff's motion should be denied.


Dated:  June 24, 2008                    By:    /s/ Stephen P. Sonnenberg
                                                      Stephen P. Sonnenberg
                                                      Glenn S. Grindlinger
                                                      Alison R. Kirshner

                                                      Paul, Hastings, Janofsky & Walker LLP
                                                      75 East 55th Street
                                                      New York, NY  10022-3205
                                                      (212)  318-6000

                                                      *Attorneys for Defendant*
                                                      *Mitsubishi International Corporation*

STEPHEN P. SONNENBERG
GLENN S. GRINDLINGER
ALISON R. KIRSHNER
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES BONOMO, | 07 Civ. 5967 (CM) |
| Plaintiff, | |
| - against - | **CERTIFICATE OF SERVICE** |
| MITSUBISHI INTERNATIONAL CORPORATION, | |
| Defendant. | |

The undersigned member of the Bar of this Court certifies that she served a true and correct copy of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions on Michael Grenert, Esq. of Liddle & Robinson, Attorneys for Plaintiff, by first class mail to Mr. Grenert at 800 Third Avenue, New York, New York 10022, the addresses designated by said attorney for that purpose.

Dated: New York, New York                s/ Alison R. Kirshner
            June 24, 2008